UNITED STATES v. COHEN & MANN

No. 5069.—Invoices dated Gablonz, Czechoslovakia, August 6, 1938, etc.
Certified August 9, 1938, etc.
Entered at New York August 18, 1938, etc.
Entry Nos. 720114, 760033, 728433, 829185.

Second Division, Appellate Term

(Decided December 11, 1940)

Charles D. Lawrence, Acting Assistant Attorney General (Daniel I. Auster, special attorney), for the appellant.

Barnes, Richardson & Colburn (Hadley S. King of counsel) for the appellees.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: This is an application for review of a decision rendered by a single judge involving the proper dutiable value of certain glass marmalade sets imported from Czechoslovakia.

The merchandise was entered at its invoice value at 4.90 Czech crowns per set, less 2 per centum discount, plus packing. An item of 5500 Czech crowns, included in one of the invoices covered by the consolidated appeals before us and representing the cost of molds used in manufacturing the 10,000 marmalade sets embraced in the shipments in question, was also entered as a dutiable item. The said

articles were appraised at 8 Czech crowns per set, less 2 per centum, plus cases and packing.

There is no dispute between the respective parties with respect to the item of discount, and the item of cases and packing; and since it is fairly established of record that the instant merchandise was manufactured for exclusive use by the importer herein, the question of foreign value is eliminated from consideration herein. Hence, the sole issue before us is the determination of the *per se* price of the instant merchandise that correctly represents the proper dutiable export value thereof.

The court below found such *per se* value of the glass marmalade sets in question to be 6 crowns per set, and in reaching that conclusion said:

The sales of this or similar articles to wholesalers in America ranging from about 5.50 crowns each to 6 crowns each seem to be in greater quantity than sales to retailers at a higher figure.

As the opinion of the lower court indicates, the testimony adduced at the trial below referred to sales at various prices of merchandise such as or similar to that in question to two classes of purchasers, to wit, wholesalers and so-called retailers or department stores, yet the record is silent as to the number of transactions at which sales were made at each of the different prices mentioned, except in one instance where the Government's witness, who was the United States examiner that passed the instant merchandise, testified "there were more than three importations" by an American importer of the similar merchandise, illustrative exhibit A herein, which, it is conceded, formed the basis of appraisement for the instant merchandise.

Export value, as such value is defined in section 402 (d) of the tariff act, contains four elements, all of which are matters of proof and which are essential to properly establish said value within the meaning contemplated by the statute. In determining such export value, consideration must be given to the market value or the price at which merchandise like or similar to that imported is sold or freely offered for sale, (1) in the ordinary course of trade; (2) to all purchasers; (3) in the principal markets of the country from which exported; (4) and in the usual wholesale quantities.

The record before us is clear that the quantities imported by the so-called retailers in some instances exceeded those purchased by wholesalers, and that in no case, either in sales to wholesalers or to so-called retailers, did the quantity purchased affect the price paid. But the evidence before us does not, in our judgment, reflect the ordinary course of trade that was followed in the foreign market in dealing with merchandise like or similar to that imported for exportation to the United States. Reference is made in the testimony to

transactions with a jobber in Germany, but nothing was offered to distinguish the method of handling said merchandise between said jobber and manufacturers, although emphasis was placed on the fact that the sales by the jobber were at a higher price than those consummated between manufacturers and American importers. The prices mentioned by the witnesses range from 5¾ crowns per set to 8 crowns per set, but no attempt was made to set forth reasons for the difference in the invoice prices to different customers. Were said prices fixed by the bargaining ability of the purchaser? Are said prices dependent upon the status of the customer? In other words, the plaintiff in the court below did not, in our opinion, definitely establish the freely offered price in the principal market of Gablonz, Czechoslovakia, to all purchasers of merchandise such as or similar to that imported, that prevailed at the time of exportation thereof for exportation to the United States. And, having failed to do so, said plaintiff did not meet the statutory burden cast upon it by the statute.

Since section 501 of the tariff act attaches a presumption of correctness to the values found by the appraiser, which, in our opinion, has not been overcome herein, we hold that said values represent the properly dutiable export values of the glass marmalade sets in question.

The judgment of the court below is modified accordingly. Judgment will be rendered accordingly.